544 P.2d 1153

Ron E. HICKS, Personal Representative and
Administrator of the Estate of Beverly Jan
Hicks, Deceased, and Robin E. Hicks, De-
ceased, Plaintiff-Appellant,

v.

STATE of New Mexico, State Highway Com-
mission, State Highway Department, State
Highway Engineer, DeBaca County and
the DeBaca County Commission, Defend-
ants-Appellees.

No. 10134.

Supreme Court of New Mexico.

Sept. 26, 1975.

On Rehearings Jan. 16 and Jan. 19, 1976.

Rehearing Denied Feb. 11, 1976.

Branch & Branch, Turner W. Branch,
Albuquerque, for plaintiff-appellant.

Toney Anaya, Atty. Gen., Thomas Lea
Dunigan, Deputy Atty. Gen., Richard L.
Russell, Chief Counsel, State Highway
Dept., Henry Rothschild, James V. Noble,
State Highway Dept. Asst. Attys. Gen.,
Santa Fe, for defendants-appellees.

OPINION

MONTOYA, Justice.

This appeal arises from an order of the
Santa Fe County District Court granting
the motion of defendant State of New
Mexico to dismiss on the ground that the
action of plaintiff Ron E. Hicks was
barred by the doctrine of sovereign immu-
nity.

Suit was originally brought in the Dis-
trict Court of Santa Fe County on August
6, 1973, to recover damages for the wrong-
ful death of plaintiff's wife and minor
daughter due allegedly to the negligence of
the State Highway Department. These
deaths were the result of an accident near
Fort Sumner, New Mexico, on December
26, 1972, when a school bus collided with a
cattle truck on a narrow bridge constructed
and maintained by the State Highway De-
partment. Subsequently, defendant filed a

motion to dismiss. After a hearing, the motion was granted by order of the trial court on May 31, 1974. On June 21, 1974, plaintiff filed a notice of appeal.

In a memorandum decision, the district court stated that the doctrine of sovereign immunity was a long-standing common law principle which could now be changed only by legislative action. We do not agree that a change in this age-old doctrine can only be made by the legislature.

As recognized by the district court, the doctrine of sovereign immunity is one of common law, judicially created. This court stated in the case of *Dougherty v. Vidal*, 37 N.M. 256, 257–58, 21 P.2d 90, 91 (1933), that:

> " 'It is a fundamental doctrine *at common law* and everywhere in America that no sovereign state can be sued in its own courts or in any other without its consent and permission.' *State ex rel. Evans v. Field*, 27 N.M. 384, 201 P. 1059, 1060 [1921]. * * *" (Emphasis added.)

See also *Arnold v. State*, 48 N.M. 596, 154 P.2d 257 (1944).

Over the years, we have tenaciously retained this archaic principle in spite of changing circumstances. See *Sangre De Cristo Dev. Corp., Inc. v. City of Santa Fe*, 84 N.M. 343, 503 P.2d 323 (1972). Not until 1941 did the legislature enact any law directly relating to the matter of sovereign immunity. However, under §§ 64–25–8 and 9, N.M.S.A., 1953 (2d Repl. Vol. 9 Pt. 2, 1972), authority was provided for the State Board of Finance to require the purchase of liability insurance in respect to the negligent operation of motor vehicles by the State and its political subdivisions. Additionally, "no action shall be brought" against the State or its political subdivisions, only against the operator of the vehicle. The insurer may not raise sovereign immunity as a defense, but the plaintiff must provide a release of any judgment over the limits of the insurance policy. Eventually, these sections were probably repealed by implication by §§ 5–6–18 through 22, N.M.S.A., 1953 (Repl. Vol. 2 Pt. 1, 1974), which were more comprehensive in nature. See *Galvan v. City of Albuquerque*, 87 N.M. 235, 531 P.2d 1208 (1975). Both of these statutory schemes were in harmony with the common law doctrine of sovereign immunity, but had the effect of lessening, to a certain extent, the oftentimes harsh results of that doctrine. They definitely did not, as argued by defendants, create statutory sovereign immunity. It is to be noted that after the filing of this action our legislature in its last session, Ch. 334, Laws 1975, repealed §§ 5–6–18 through 5–6–21, supra, § 14–9–7, N.M.S.A., 1953 (Repl. Vol. 3, 1968), §§ 64–25–8 and 64–25–9, supra, and made the laws effective as of July 1, 1975. Under § 2 of said Act the legislature states the purpose to be as follows:

> "The purpose of this act is to modify the common-law doctrine of sovereign immunity by providing a permissive method whereby the state or a local public body may elect to protect itself and its officers and employees from personal liability arising out of certain acts committed during the performance of governmental and proprietary activities and to compensate the individuals wrongfully harmed by these actions."

The legislature itself recognizes that sovereign immunity is a common law doctrine and this should dispel the argument or contention that sovereign immunity was statutorily created, either by the repealed statutes, supra, or by the statute adopting the common law in New Mexico. See § 21–3–3, N.M.S.A., 1953 (Repl. Vol. 4, 1970).

Defendants also argue that § 21–3–3, supra, transformed sovereign immunity into a statutorily created principle. With this we cannot agree. This statute was originally passed not for the purpose of integrating sovereign immunity into the statutory body of law, but for the purpose of providing the judiciary of the New Mexico Territory with some precedential foundation on which to rely. The doctrine

of sovereign immunity has always been a judicial creation without statutory codification and, therefore, can also be put to rest by the judiciary. *Clark v. Ruidoso-Hondo Valley Hospital*, 72 N.M. 9, 380 P.2d 168 (1963); *Elliott v. Lea County*, 58 N.M. 147, 267 P.2d 131 (1954); and all other cases holding that the legislature and not the judiciary is the proper forum to decide the fate of sovereign immunity are expressly overruled. Merely because a court made rule has been in effect for many years does not render it invulnerable to judicial attack once it reaches a point of obsolescence.

The power of this court to do away with common law principles was stated in *Flores v. Flores*, 84 N.M. 601, 603, 506 P. 2d 345, 347 (Ct.App.1973), a case involving common law interspousal tort immunity:

"Defendant contends the common law rule must be applied because by statute the common law is the rule of practice and decision in New Mexico. (Citation omitted.) The answer is that *the common law is not the rule of practice and decision if 'inapplicable to conditions in New Mexico.'* Ickes v. Brimhall, 42 N. M. 412, 79 P.2d 942 (1938). *If the common law is not 'applicable to our condition and circumstances' it is not to be given effect.* (Citations omitted.) * * *" (Emphasis added.)

The original justification for the doctrine of sovereign immunity was the archaic view that "the sovereign can do no wrong." It is hardly necessary for this court to spend time to refute this feudalistic contention. This and all other rationalizations which have been advanced to justify continued adherence to this doctrine are no longer valid in New Mexico. The argument has been presented that the elimination of sovereign immunity will result in an intolerable financial burden upon the State. We believe it is safe to say that adequate insurance can be secured to eliminate that possible burden in a satisfactory manner. In addition, it would appear that placing the financial burden upon the State, which is able to distribute its losses throughout the populace, is more just and equitable than forcing the individual who is injured to bear the entire burden alone. There are presently in New Mexico no conditions or circumstances which could rationally support the doctrine of sovereign immunity. We have long recognized that the doctrine is not applicable to municipalities when engaged in a proprietary function. *Barker v. City of Santa Fe*, 47 N.M. 85, 136 P.2d 480 (1943).

Several times in the recent past this court has cast aspersions upon sovereign immunity:

"As to sovereign immunity, that doctrine, insofar as it has been created by courts, seems headed for a deserved repose. Courts and scholars can find little reason for it, and its historical basis is of doubtful validity. * * *"

*City of Albuquerque v. Garcia*, 84 N.M. 776, 778, 508 P.2d 585, 587 (1973).

"* * *. We are thus not concerned with the outmoded medievalisms embedded in our jurisprudence in the form of judicially-created sovereign immunity."

*State ex rel. N.M. Water Qual. C.C. v. City of Hobbs*, 86 N.M. 444, 445, 525 P.2d 371, 372 (1974). But unfortunately, in those cases, the issue was not squarely before us, as it is today. Thus, we take this opportunity to rid the State of this legal anachronism. Common law sovereign immunity may no longer be interposed as a defense by the State, or any of its political subdivisions, in tort actions. Sovereign immunity was born out of the judicial branch of government, and it is the same branch which may dispose of the doctrine. It can no longer be justified by existing circumstances and has long been devoid of any valid justification. In so doing, we

join the growing number of States which have judicially abolished it.[1]

We recognize that this is a far-reaching decision which, at first blush, does violence to the doctrine of "stare decisis." However, we do not feel that "stare decisis" should be used to perpetuate the harsh and unjust results which blind adherence to sovereign immunity rules mandated. We concede that there was ample authority which influenced our predecessors in adopting and upholding the doctrine of sovereign immunity. We also say that there is better reasoned authority to overturn it. We simply conclude that its continuance is causing a great degree of injustice.

In today's world, we cannot discount the extent of governmental intervention and actions which affect the conduct of human affairs. We agree with the reasoning of the Supreme Court of Pennsylvania in its discussion of the doctrine in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 592, 305 A.2d 877, 881–82 (1973), when it stated:

> "Today we conclude that no reasons whatsoever exist for continuing to adhere to the doctrine of governmental immunity. Whatever may have been the basis for the inception of the doctrine, it is clear that no public policy considerations presently justify its retention.

> "Governmental immunity can no longer be justified on 'an amorphous mass of cumbrous language about sovereignty. . . .' Leflar and Kantrowitz, Tort Liability of the States, 29 N.Y.U.L.Rev. 1363, 1364 (1954). As one court has stated:

> '" '. . . it is almost incredible that in this modern age of comparative sociological enlightenment, and in a republic, the medieval absolutism supposed to be implicit in the maxim, "the King can do no wrong," should exempt the various branches of the government from liability for their torts, and that the entire burden of damage resulting from the wrongful acts of the government should be imposed upon the single individual who suffers the injury, rather than distributed among the entire community constituting the government, where it could be borne without hardship upon any individual, and where it justly belongs.' *Barker v. City of Santa Fe*, 47 N.M. 85, 136 P.2d 480, 482. Likewise, we agree with the Supreme Court of Florida that in preserving the sovereign immunity theory, courts have overlooked the fact that the Revolutionary War was fought to abolish that 'divine right of kings' on which the theory is based." '

*Molitor v. Kaneland Community Unit District No. 302*, * * * [18 Ill.2d 11, 21–22, 163 N.E.2d 89, 94 (1959)]. See also *Evans v. Board of County Commissioners*, * * * [174 Colo. 97, 482 P. 2d 968 (1971)]; *Hargrove v. Town of Cocoa Beach*, * * * [96 So.2d 130 (Fla.1957)].

> "Moreover, we are unwilling to perpetuate the motion that 'it is better that an individual should sustain an injury than that the public should suffer an inconvenience.' *Russell v. Men of Devon*, * * * [2 T.R. 667, 673, 100 Eng.Rep. 359, 362 (1788)]. This social philosophy of nonliability is 'an anachronism in the law of today.' *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 502, 208 A.2d 193, 201 (1965). As has been noted:

> ' "The social climate which fostered the growth of absolutism and the divine right of kings in England has long since been tempered with the warm winds of humanitarianism and individual freedom. The changes which have occurred in the last century with respect to the imposition of liability upon private corporate enterprises of any kind are well-known. Work-

---

1. See attached Appendix for a compilation of States that have abolished the doctrine of governmental immunity.

men's compensation laws have replaced the old theories which permitted the corporate organizations to escape liability under the fellow-servant rule or the doctrine of assumption of risk. Liability may now be predicated without fault merely on grounds that potential injuries to individuals must be calculated as a part of the cost of doing business, and must be paid for by the business enterprise. *There is widespread acceptance of a philosophy that those who enjoy the fruits of the enterprise must also accept its risks and attendant responsibilities.*" '

Smith, Municipal Tort Liability, 48 Mich.L.Rev. 41, 48 (1949) (emphasis added) (footnote omitted).

"Recently, this Court reiterated the prevailing philosophy that liability follows tortious conduct. In *Niederman v. Brodsky*, 436 Pa. 401, 403, 261 A.2d 84, 85 (1970), we said:

'"'It is fundamental to our common law system that one may seek redress for every substantial wrong. "The best statement of the rule is that a wrongdoer is responsible for the natural and proximate consequences of his misconduct. . . ."' *Battalla v. State*, 10 N.Y.2d 237, 240, 219 N.Y.S.2d 34, 36, 176 N.E.2d 729, 730 (1961)."'

See also *Stone v. Arizona Highway Commission*, * * * [93 Ariz. 384, 392, 381 P.2d 107, 112 (1963); *Muskopf v. Corning Hospital District*, * * * [55 Cal.2d 211, 220, 11 Cal.Rptr. 89, 94, 359 P.2d 457, 462 (1961)].

"Appellee offers no reason—and we are unable to discern one—for permitting governmental units to escape the effect of this fundamental principle."

Though the foregoing case decided by the Pennsylvania Supreme Court related to liability of a local school board, we believe that the principles and reasoning enunciated therein apply equally to a State agency.

We, therefore, conclude that the ancient doctrine of sovereign immunity has lost its underpinnings by the social and govern-

mental changes which have occurred. This view was expressed with great clarity by Justice Cardozo in the following words:

"'A rule which in its origins was the creation of the courts themselves, and was supposed in the making to express the *mores* of the day, may be abrogated by the courts when the *mores* have so changed that perpetuation of the rule would do violence to the social conscience.'

Cardozo, The Growth of the Law 136–37 (1924)."

*Ayala v. Philadelphia Board of Public Education,* supra, 453 Pa. at 602, 305 A.2d at 886.

In view of our disposition of this matter, we deem it unnecessary to consider the constitutional challenges presented by plaintiff.

Accordingly all prior cases wherein governmental immunity from tort liability was recognized are expressly overruled and shall no longer be considered precedents in tort actions filed against governmental agencies.

Since this action involves a significant and major change in tort liability for governmental agencies, the question of its applicability to past, pending and future cases must be determined. The factors to be considered concerning retroactivity of court decisions are set out in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The United States Supreme Court there concluded that no distinction is drawn between civil and criminal litigation. It further held that there are no constitutional requirements concerning retroactivity, and that in each case the court may determine whether retroactive or prospective application is appropriate. After considering the factors as announced in *Linkletter v. Walker,* supra, it is our considered opinion that the rule of law announced herein shall have modified prospectivity. Consequently, the decision we announce herein applies to the case at bar, all similar pending actions and all cases which may arise in the future.

Consequently, the order of the district court is reversed. This matter is remanded to the district court with instructions to proceed with the action initiated by plaintiff in accordance with the views expressed herein.

It is so ordered.

McMANUS, C. J., and STEPHENSON, J., concur.

APPENDIX: List of States in their respective positions regarding governmental immunity.*

" * * *. The columns are as follows: (1) General abolition of immunity, subject to the normal exceptions, (2) Partial abolition, (3) Abolition (or waiver) in case of insurance, and (4) Full retention of immunity. It is harder to classify the states here, but the following is at least a bona fide effort to be objective.

"§ 895B

| Abolished | Partial | Insurance | Immunity |
|-----------|---------|-----------|----------|
| Alaska | Conn. | Ga. | Ala. |
| J Ariz. | Ky. | Kan. | Ark. |
| J Cal. | Mich. | Me. | Del. |
| J Colo. | Minn. | Mont. | Fla. |
| Haw. | Tenn. | N.H. | Md. |
| J Ida. | N.C. | N.M. | Mass. |
| Ill. | S.C. | N.D. | Miss. |
| J Ind. | Tex. | Okla. | Mo. |
| Ia. | W.Va. | | Ohio |
| La. | | | Pa. |
| Neb. | | | S.D. |
| Nev. | | | Va. |
| J N.J. | | | Wyo. |
| N.Y. | | | |
| Ore. | | | |
| R.I. | | | |
| Utah | | | |
| Vt. | | | |
| Wash. | | | |
| J Wis. | | | |
| J D.C. | | | |
| 21 (8 J) | 9 | 8 | 13 " |

(A "J" in front of a state means that change was made judicially.)

* Source: Restatement (Second) Torts, Special Note § 895B at 21 (Tent.Draft No. 19, March 30, 1973).

Since the above information was published, Kansas, Pennsylvania and West Virginia have judicially abolished governmental immunity as to all or some governmental agencies.

### ORDER ON REHEARING

Defendants-appellees sought and were granted a rehearing limited to the clarification of the Court's ruling on "modified prospectivity," as set forth in the original opinion, and secondly, seeking a modification of the opinion so as to apply the ruling prospectively as of July 1, 1976.

The Court having requested briefs and having heard argument on the issues raised at rehearing, by majority vote, is of the opinion that the motion made by the Attorney General is well taken and that the ruling heretofore announced as to prospectivity should be modified. The Court accordingly holds that the ruling announced on September 26, 1975, is not to take effect or apply to the case at bar or to any other cause or action in tort against any governmental agency if the alleged tort occurred or occurs prior to July 1, 1976.

Accordingly, the order of the District Court granting the motion to dismiss the State of New Mexico, State Highway Commission and State Highway Department, is affirmed.

This matter is remanded to the District Court of Santa Fe County with instructions to proceed in accordance with the views expressed in this Order on Rehearing.

Entered nunc pro tunc as of January 5, 1976.

OMAN, C. J., and McMANUS and STEPHENSON, JJ., concur.

MONTOYA and SOSA, JJ., dissenting.

### OPINION ON MOTION
### FOR REHEARING

McMANUS, Justice.

By Order effective January 5, 1976, we modified our decision in *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153, filed September 26, 1975, by holding that it is not to take

effect nor apply to the case at bar or to any other cause or action in tort against any governmental agency if the alleged tort has occurred or occurs prior to July 1, 1976. We based this modification upon the briefs and arguments presented in the rehearing which we granted to the State. The rehearing was limited to the issue of whether the *Hicks* decision should apply: (1) only to cases arising in the future; (2) to cases arising in the future and to the case at bar; or (3) to cases arising in the future, to the case at bar and to all similar pending actions.

In the original *Hicks* decision we selected the third option. The briefs and arguments presented on rehearing developed this issue much more fully than had been done in the briefs and arguments on the appeal. We now conclude that the *Hicks* decision should apply only to cases arising in the future.

Many courts abolishing sovereign immunity have applied their decisions to cases arising in the future and to the case under consideration (the second option mentioned above). *Parish v. Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968); *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill.2d 11, 163 N.E.2d 89 (1959); *Willis v. Department of Conservation & Econ. Dev.*, 55 N.J. 534, 264 A.2d 34 (1970; *Becker v. Beaudoin*, 106 R.I. 562, 261 A.2d 896 (1970).

At least two other courts have abolished sovereign immunity on a purely prospective basis, denying relief even to the plaintiffs who brought the action. *Williams v. City of Detroit*, 364 Mich. 231, 111 N.W.2d 1 (1961); *Spanel v. Mounds View School District No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962). In support of their decision the Minnesota Supreme Court in *Spanel* quoted Mr. Justice Cardozo from an article at 109 Pa.L.Rev. 13, as follows:

"The rule that we are asked to apply is out of tune with the life about us. It has been made discordant by the forces that generate a living law. We apply it to this case because the repeal might work hardship to those who have trusted to its existence. We give notice, however, that any one trusting to it hereafter will do so at his peril." 264 Minn. at 294, 118 N.W.2d at 804.

The Minnesota court went on to conclude:

"It may appear unfair to deprive the present claimant of his day in court. However, we are of the opinion it would work an even greater injustice to deny defendant and other units of government a defense on which they have had a right to rely. We believe that it is more equitable if they are permitted to plan in advance by securing liability insurance or by creating funds necessary for self-insurance. In addition, provision must be made for routinely and promptly investigating personal injury and other tort claims at the time of their occurrence in order that defendants may marshal and preserve whatever evidence is available for the proper conduct of their defense." 264 Minn. at 294–95, 118 N.W.2d at 804.

We find this reasoning persuasive.

It is so ordered.

STEPHENSON, J., concurs.

OMAN, C. J., concurring specially.

MONTOYA and SOSA, JJ., dissenting.

OMAN, Chief Justice (specially concurring).

I have heretofore concurred in the Order of January 5, 1976 and now concur in the reasoning advanced by Justices McManus and Stephenson for giving prospective effect only as of July 1, 1976 to the majority opinion filed on September 26, 1975.

However, I did not agree with the majority that the doctrine of sovereign immunity should or could properly be abolished by a ruling of this Court in view of our repeated declarations that a change in the doctrine could and should be accomplished only through legislative action. *Sangre De Cristo Dev. Corp., Inc. v. City of Santa Fe*, 84 N.M. 343, 503 P.2d 323 (1972); *Montoya v. City of Albuquerque*, 82 N.M. 90, 476 P.2d 60 (1970); *Clark v. Ruidoso-Hondo Valley Hospital*, 72 N.M. 9, 380 P.2d 168

(1963); *City of Albuquerque v. Campbell,* 68 N.M. 75, 358 P.2d 698 (1960); *Livingston v. Regents of New Mexico Col. of A. & M. A.,* 64 N.M. 306, 328 P.2d 78 (1958); *Elliott v. Lea County,* 58 N.M. 147, 267 P.2d 131 (1954).

I agree with the majority opinion that this Court has the power to do away with court-created common law principles. However, if sovereign immunity was in fact court-created, this Court has repeatedly declined to so treat it and has repeatedly held any change in the doctrine was to be made by the Legislature. I am of the opinion that the people of New Mexico, and particularly the New Mexico Legislature, had the right to rely upon our repeated disclaimers of power to overrule the doctrine. In fact, the Legislature has repeatedly relied upon these disclaimers and has assumed the power to effect changes in the doctrine.

Also, because of our long and oft-repeated declarations that the matter of change in sovereign immunity was for the Legislature, I have always been of the opinion that if the doctrine were to be abolished by action of this Court it should be done prospectively only, in order to give the Legislature a fair opportunity to take whatever action it should deem advisable before the abolishment of the long accepted immunity.

MONTOYA, Justice (dissenting).

I respectfully disagree with the conclusion reached by the majority on rehearing, that the ruling previously made in this case should not take effect until July 1, 1976. The "modified prospectivity" rule, as announced in our opinion, is in accord with well-recognized principles of justice. The terms "similar pending actions" and "causes arising in the future," alleged to be ambiguous, have a definite legal meaning and are not subject to interpretation as claimed. It recognizes the oft-stated principle of law that all citizens should have access to the courts in seeking redress for every substantial wrong. The spectre that the effects of this ruling will bankrupt the State is, at best, based on pure conjecture and speculation. Before the State can be held liable for any claim the liability must be established and the damages proven in a court of law. I do not believe that reliance, convenience or expediency should outweigh the just objective that an aggrieved party be compensated for injuries suffered when incurred through the negligence of the State or any of its political subdivisions. In *Barker v. City of Santa Fe,* 47 N.M. 85, 88, 136 P.2d 480, 482, (1943), we referred to an Annot. in 75 A.L.R. at 1196, which said that the sovereign immunity doctrine should not exempt the various branches of the government from liability for their torts, and that the entire burden of damages resulting from the wrongful acts of the government should not be imposed upon the single individual that is injured,

> " '* * * rather than distributed among the entire community constituting the government, where it could be borne without hardship upon any individual, and where it justly belongs.' "

Though in that case we were dealing with a tort allegedly committed by a municipality in the exercise of a proprietary function, the same principle should apply to all torts committed by any governmental agency acting in any capacity. In today's world, consideration of the extent of governmental intervention and the many regulations which affect the actions of the individual citizens, should compel the adoption of the reasoning in *Barker v. City of Santa Fe,* supra, and thus permit an injured person to hold the wrongdoer responsible for the proximate consequences of the wrongdoer's misconduct, whether it be the government or a person or private corporation. To insulate the government from responsibility for its negligence, even for a short period of time, once we have declared that anyone injured by a tortious act of the government should have the opportunity and right to litigate their claims in the court, is not only devoid of logic but disregards the very reasoning which prompted this Court to eliminate "the harsh and unjust results which blind adherence to sovereign immunity rules mandated."

The least this Court should do is to apply the ruling to the case at bar where, through the efforts of the appellant, we have been afforded an opportunity to change an outmoded and unjust rule of law. The majority of cases dealing with the problem, excepting two, have applied the ruling to the case which resulted in the abolishment of the doctrine of sovereign immunity. To do otherwise would prevent case law or decisions from keeping up with the changing needs of society, when we deprive the litigant who was successful in making the change possible of the opportunity to completely litigate his claim on the merits. To be left only with the distinction of causing a change in the rule of law seems manifestly unfair.

The majority feeling otherwise, I respectfully dissent from the order on rehearing for the reasons above stated.

SOSA, Justice (dissenting).

I respectfully disagree with the majority's opinion that the ruling made in this case should not take effect until July 1, 1976. I feel that to deprive the parties who were responsible for the abolishment of the antiquated and anachronistic doctrine of sovereign immunity of having their day in court is like leaving a grieving widow at the grave of her deceased husband, killed through someone's negligence, without a cause of action or a remedy. I think this ruling is harsh and unjust. I would have made the ruling applicable to the case at bar and all those cases actually filed prior to our decision, which were undisposed. They were filed based on dicta that the doctrine's demise was near. I would not penalize those that took this court at its word.

The main reason for the abolishment of sovereign immunity was that it created an injustice in the law. I feel that the majority ruling making the ruling in the case effective beginning July 1, 1976, creates another injustice.

I respectfully dissent from the order on rehearing for the above stated reasons.