## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2019-NMCA-044**

**Filing Date: May 29, 2019**

**Nos. A-1-CA-35474 and A-1-CA-37081**

**BELEN CONSOLIDATED SCHOOL
DISTRICT,**

Respondent,

**v.**

**THE COUNTY OF VALENCIA,**

Petitioner.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY
James L. Sanchez, District Judge**

and

**GREGORY A. NASH and SUSIE K. NASH,**

Plaintiffs-Appellants,

**v.**

**GROUP I:
BOARD OF COUNTY COMMISSIONERS
OF CATRON COUNTY, NEW MEXICO,
a Political Subdivision of the State of
New Mexico; and ELENA GELLERT,**

and

**GROUP II:
ALL UNKNOWN CLAIMANTS OF
INTEREST IN THE PREMISES
ADVERSE TO THE PLAINTIFFS,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF CATRON COUNTY**
**Shannon Murdock, District Judge**

Certiorari Granted, August 9, 2019, Nos. S-1-SC-37692 and S-1-SC-37778.  Released for Publication September 17, 2019.

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Arthur D. Melendres
Zachary L. McCormick
Albuquerque, NM

for Respondent Belen Consolidated School District

Nance, Pato & Stout, LLC
Adren R. Nance
|David M. Pato
Socorro, NM

for Petitioner Valencia County
for Appellees Catron County Board of Commissioners

The Turner Law Firm, LLC
Scott E. Turner
Albuquerque, NM

for Appellants Gregory A. Nash and Susie K. Nash

## OPINION

**DUFFY, Judge.**

{1}     The formal opinion filed in this case on May 2, 2019, is hereby withdrawn and this opinion is substituted in its place. In these appeals, we address whether the defendant counties are immune from Plaintiffs' quiet title lawsuits under NMSA 1978, Section 42-11-1 (1979) ("Granting immunity; providing for exceptions."). In two separate quiet title suits, Plaintiffs named the County of Valencia (Valencia County) and the Board of County Commissioners of Catron County (Catron County) (collectively, the Counties) as parties who claimed or may claim an interest in the subject properties. In both actions, the Counties responded by filing motions to dismiss on the ground that Section 42-11-1 provided them with immunity and barred the lawsuits. In the Valencia County suit, the district court determined that Valencia County was not immune from suit and allowed the lawsuit to proceed. In the Catron County suit, the district court reached the opposite conclusion and dismissed the lawsuit. Because these appeals raise substantially similar issues, we exercise our discretion to consolidate them for decision. *See* Rule 12-317(B) NMRA. We conclude that Section 42-11-1 grants the Counties immunity from these lawsuits, and that there is no statutory exception to the

Counties' immunity in these cases. We therefore reverse the district court in the Valencia County suit and affirm the district court in the Catron County suit.

## BACKGROUND

### Development of Immunity in New Mexico

**{2}** Before presenting the factual and procedural background of these cases, we provide a brief overview of the history and development of the law of immunity relevant to this appeal. In 1876, our territorial legislature "adopted the common law as the rule of practice and decision[.]" *Beals v. Ares*, 1919-NMSC-067, ¶ 36, 25 N.M. 459, 185 P. 780. Consequently, New Mexico followed the common law doctrine of sovereign immunity, whereby "no sovereign state can be sued in its own courts or in any other without its consent and permission." *Hicks v. State*, 1975-NMSC-056, ¶ 4, 88 N.M. 588, 544 P.2d 1153 (internal quotation marks and citation omitted), *superseded by statute as stated in Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, ¶ 8, 140 N.M. 205, 141 P.3d 739; *see id.* ("[T]he doctrine of sovereign immunity is one of common law, judicially created."). Due to the "oftentimes harsh results of that doctrine," our Legislature carved out certain statutory exceptions to sovereign immunity in which the state gave its consent to be sued. *Id.* ¶ 5. In 1947, the Legislature enacted such an exception in NMSA 1978, Section 42-6-12 (1947),[1] allowing the State to be sued in certain property actions. *See Brosseau v. N.M. State Highway Dep't*, 1978-NMSC-098, ¶ 6, 92 N.M. 328, 587 P.2d 1339 (stating that the purpose of Section 42-6-12 was to create an exception to sovereign immunity). Section 42-6-12 provides:

> Upon the conditions herein prescribed for the protection of the state of New Mexico, the consent of the state is given to be named a party in any suit which is now pending or which may hereafter be brought in any court of competent jurisdiction of the state to quiet title to or for the foreclosure of a mortgage or other lien upon real estate or personal property, for the purpose of securing an adjudication touching any mortgage or other lien the state may have or claim on the premises or personal property involved.

**{3}** Section 42-6-12 remains in effect and unmodified since its enactment. In its seventy-two year history, it has been construed only once, in 1958, when the New Mexico Supreme Court, relying on specific language in the statute, concluded that the scope of the state's consent to suit granted by the statute was limited to quiet title actions against the state "for the limited purpose of aiding a mortgagee who discovers that the [s]tate has acquired an interest in the mortgaged property and is unable to pass a marketable title to the purchaser at a foreclosure sale unless the state can be joined in the foreclosure suit." *Maes v. Old Lincoln Cty. Mem'l Comm'n*, 1958-NMSC-115, ¶ 10,

---

[1]This statute was formerly compiled as NMSA 1941, Section 25-1312, and NMSA 1953, Section 22-14-12. It was recompiled as Section 42-6-12 without alteration.

64 N.M. 475, 330 P.2d 556; *see also Nevares v. State Armory Bd.*, 1969-NMSC-144, ¶ 11, 81 N.M. 268, 466 P.2d 114 (applying *Maes* without analysis).

**{4}** In 1975, the New Mexico Supreme Court abolished sovereign immunity "as a defense by the [s]tate, or any of its political subdivisions, in tort actions." *Hicks*, 1975-NMSC-056, ¶ 9 ("Sovereign immunity was born out of the judicial branch of government, and it is the same branch which may dispose of the doctrine."). Three years later, our Supreme Court extended the holding of *Hicks* and abolished sovereign immunity in quiet title actions as well. *Brosseau*, 1978-NMSC-098, ¶ 11.

**{5}** The Legislature responded to *Hicks* by enacting statutes that created immunity for the State once again. *See* NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2015) (Tort Claims Act); *Ferguson v. N.M. State Highway Comm'n*, 1982-NMCA-180, ¶¶ 4-6, 99 N.M. 194, 656 P.2d 244 (affirming the Legislature's constitutional authority to adopt statutory partial immunity and observing that New Mexico turned from common law total immunity to our Supreme Court's denial of any immunity to partial statutory immunity). And one year after *Brosseau* was decided, the Legislature reestablished immunity in property actions by enacting Section 42-11-1, which provides that "[t]he state of New Mexico and its political subdivisions . . . may not be named a defendant in any suit, action, case or legal proceeding involving a claim of title to or interest in real property except as specifically authorized by law."

### The Valencia County Suit

**{6}** In the Valencia County suit, Plaintiff Belen Consolidated School District (School District) sought to quiet title to a piece of real property in order to sell it. The School District named Valencia County as a party defendant, alleging that Valencia County had claimed an interest in the property. Valencia County filed a motion to dismiss, claiming immunity from suit pursuant to Section 42-11-1. And although it never asserted a specific claim to title, Valencia County stated that it used the land in question as a park and sports facility for area youth. In response, the School District claimed that Section 42-6-12 provides an exception to Valencia County's immunity and allows for quiet title lawsuits against political subdivisions of the state, including counties. At the hearing, the district court concluded that *Brosseau* was controlling and denied Valencia County's motion to dismiss. We accepted Valencia County's appeal on a writ of error pursuant to Rule 12-503(B) NMRA.

### The Catron County Suit

**{7}** In the Catron County suit, Plaintiffs Gregory A. Nash and Susie K. Nash (the Nashes) filed a complaint against Catron County and others to quiet title to a piece of real property that they owned in fee simple pursuant to a recorded warranty deed. The Nashes' property is located adjacent to and shares a boundary line with a property located in Reserve, New Mexico, which is owned by Catron County and apparently houses the Catron County courthouse complex. The Nashes named Catron County as a party that may claim an interest in their property due to a later-recorded deed and "to

the extent [Catron] County may not agree with the location of the boundary line of the [p]roperty."

**{8}** Catron County moved to dismiss the Nashes' complaint for failure to state a claim upon which relief may be granted, arguing that it was immune from suit pursuant to Section 42-11-1. Catron County acknowledged that Section 42-6-12 provides an exception to immunity but argued that our Supreme Court's holding in *Maes* controlled and limited the state's consent to be sued to foreclosure suits in which the state claims an interest in the mortgaged property. In response, the Nashes relied upon *Brosseau*, particularly its statement that "[t]he doctrine of sovereign immunity may not be interposed to bar quiet title actions if its effect is to deny one a remedy for the taking of his property without compensation." 1978-NMSC-098, ¶ 12. They asked the district court to consider the public policy articulated in *Brosseau*—that "[i]t is in the public interest that [clouds on title] be removed in order that land be put to its full potential use[,]" and that property owners "may have no adequate substitute to obtain an adjudication of their property rights as against the claimed interest of the [s]tate." *Id.* ¶¶ 11-12. The district court granted Catron County's motion to dismiss, concluding the Nashes' claim was barred by statutory immunity.

## DISCUSSION

**{9}** Whether Section 42-11-1 bars Plaintiffs' quiet title suits against the Counties is a question of law that we review de novo. *See Rutherford v. Chaves Cty.*, 2003-NMSC-010, ¶ 8, 133 N.M. 756, 69 P.3d 1199 ("The standard of review for determining whether governmental immunity under the [Tort Claims Act] bars a tort claim is a question of law which we review de novo."), *abrogated on other grounds as recognized by Lujan v. N.M. Dep't of Transp.*, 2015-NMCA-005, ¶¶ 8-9, 341 P.3d 1.

**{10}** The starting point for our discussion is to define the framework of controlling authority, considering *Brosseau*, which abolished judicially created sovereign immunity from quiet title actions in 1978, and the Legislature's enactment in 1979 of Section 42-11-1, which provides the State and its political subdivisions with statutory immunity in any lawsuit "involving a claim of title to or interest in real property." The Nashes urge us to construe Section 42-11-1 in a manner consistent with *Brosseau*, relying on the principle of statutory construction that "[w]e presume that the [L]egislature knew about the existing law and did not intend to enact a law inconsistent with any existing law." *Doe v. State ex rel. Governor's Organized Crime Prevention Comm'n*, 1992-NMSC-022, ¶ 12, 114 N.M. 78, 835 P.2d 76. This principle, however, is inapplicable in circumstances where the "legislation directly and clearly conflicts with the common law[.]" *Sims v. Sims*, 1996-NMSC-078, ¶ 23, 122 N.M. 618, 930 P.2d 153. When a direct conflict exists, our Supreme Court has made clear that "the legislation will control because it is the most recent statement of the law." *Id.*; *Beals*, 1919-NMSC-067, ¶ 36 (stating that when a statute is counter to the common law, the common law gives way insofar as the statute conflicts with its principles). Section 42-11-1 is addressed to the same subject matter as *Brosseau* and directly conflicts with its holding. Consequently, *Brosseau* must yield. *See Sims*, 1996-NMSC-078, ¶ 23 (holding that legislation controls

when it "directly and clearly conflicts with the common law"). Section 42-11-1 controls and acts as a bar to quiet title suits against the state and its political subdivisions unless specifically authorized by law.

**{11}**    In light of the incongruity between *Brosseau* and Section 42-11-1, the Counties question the ongoing effect of Section 42-6-12. Plaintiffs, in contrast, argue that Section 42-6-12 should be construed broadly to waive immunity for all quiet title suits against the state and its political subdivisions. Section 42-6-12 was not amended or abolished when the Legislature reinstated immunity in property actions by enacting Section 42-11-1, and, as noted, Section 42-6-12 remains in effect today. *See PNM Gas Servs. v. N.M. Pub. Util. Comm'n (In re Petition of N.M. Gas Servs.)*, 2000-NMSC-012, ¶ 73, 129 N.M. 1, 1 P.3d 383 ("We presume that the Legislature [i]s aware of existing law. . . at the time it enact[s new law]."). Regardless, we are bound by our Supreme Court's interpretation of Section 42-6-12 in *Maes*, which limits the state's consent to be sued to circumstances where "the [s]tate has acquired an interest in the mortgaged property and [the mortgagee] is unable to pass a marketable title to the purchaser at a foreclosure sale unless the state can be joined in the foreclosure suit." 1958-NMSC-115, ¶ 10; *see State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 22, 135 N.M. 375, 89 P.3d 47 ("[W]hile the Court of Appeals is bound by Supreme Court precedent, the Court is invited to explain any reservations it might harbor over its application of [Supreme Court] precedent so that [the Supreme Court] will be in a more informed position to decide whether to reassess prior case law[.]"). Because these circumstances are not present in either suit, we follow *Maes* and hold that the waiver of immunity set forth in Section 42-6-12 does not authorize Plaintiffs' quiet title suits.

**{12}**    We reach our holding with some uncertainty about the effect of *Brosseau* on *Maes*. We note that when the *Hicks* Court abolished sovereign immunity in tort actions, it expressly overruled all prior cases in which "governmental immunity from tort liability was recognized," but that the *Brosseau* Court did not make any similar expression. *Hicks*, 1975-NMSC-056, ¶ 15; *Brosseau*, 1978-NMSC-098. Nevertheless, we question whether, by abolishing the common law foundation that underlies *Maes*, the *Brosseau* Court also intended to part company with the rationale provided in *Maes* for construing Section 42-6-12 in the manner that it did. *Compare Maes*, 1958-NMSC-115, ¶ 11 ("Lest any doubt remain, it must be kept in mind that statutes authorizing suits against the state are in derogation of sovereignty and must be strictly construed."), *with* NMSA 1978, § 12-2A-18(C) (1997) ("The presumption that a civil statute in derogation of the common law is construed strictly does not apply to a statute of this state."). In today's landscape, immunity is predicated on the interplay of the two statutes discussed herein and presents a matter of statutory construction—an analysis we do not engage in given our conclusion that *Maes* still controls.

**Plaintiffs' Due Process Arguments**

**{13}**    As a final matter, both the School Board and the Nashes raise due process arguments on appeal, arguing that their inability to bring quiet title suits amounts to an unconstitutional taking and that no other remedy is available under these

circumstances. We decline to address the Nashes' argument following our review of the record, as the Nashes failed to raise this argument to the district court in the Catron County suit and thus failed to preserve it for appeal. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 (determining constitutional issue was not preserved where party failed to invoke a ruling of the district court on the issue). After reviewing the School District's constitutional argument, we find it insufficiently developed for consideration on the merits. The School District states that "[t]he taking of property without compensation, as [Valencia] County seeks to do here, is a violation of both state and federal constitutional rights," but has failed to demonstrate that the Takings Clause is applicable in a case involving public lands or that other remedies, such as inverse condemnation proceedings, are unavailable. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that the appellate courts are under no obligation to review unclear or undeveloped arguments). Given the record and arguments before us, we decline to address the School District's undeveloped due process argument.

**CONCLUSION**

**{14}** For the foregoing reasons, in the Valencia County suit, we reverse the district court's order denying Valencia County's motion to dismiss School District's quiet title complaint and remand for entry of an order dismissing the action against Valencia County. In the Catron County suit, we affirm the district court's order dismissing the quiet title complaint against Catron County.

**{15}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**KRISTINA BOGARDUS, Judge**