476 P.2d 60

**Carlos MONTOYA and Jose A. Montoya, Plaintiffs-Appellants,**

**v.**

**The CITY OF ALBUQUERQUE, a municipal corporation, Defendant-Appellee.**

**No. 8973.**

Supreme Court of New Mexico.

Oct. 26, 1970.

Sutin, Thayer & Browne, Jonathan B. Sutin, Albuquerque, for plaintiffs-appellants.

Frank M. Mims, Albuquerque, for defendant-appellee.

## OPINION

SISK, Justice.

Plaintiffs appeal from a summary judgment granted to defendant City of Albuquerque. The amended complaint alleged that four police officers, acting under the authority and in execution of the orders of the City, committed the tortious acts of false arrest, false imprisonment, malicious prosecution and assault and battery. Plaintiffs sought damages from the individual police officers and from the City.

This is the second time this case has been before this court. The first appeal was dismissed because no final judgment had been entered as to the defendant police officers. Plaintiffs thereafter dismissed with prejudice their claims against these officers and we now have an appealable judgment in an action against the defendant City alone.

Basically, the City claims that plaintiffs cannot recover any judgment against it because its police department is operated as a governmental function and therefore it has the defense of sovereign immunity. The City recognizes two situations in which this doctrine is not applicable. If the acts complained of were covered by liability insurance authorized by § 5–6–20, N.M.S.A.1953, the defense of sovereign immunity would not be available to the extent of such coverage. No such insurance was carried by the City. Secondly, the City may be liable for the torts of its officers if their acts come within the terms of § 14–9–7, N.M.S.A.1953, which provides:

"No personal action shall be maintained in any court of this state against any member or officer of a municipality for any tort or act done, or attempted to be done, when done by the authority of the municipality or in execution of its orders. In all such cases, the municipality shall be responsible. * * *"

The City, in effect, argues that this statute is applicable only where the specific acts complained of were authorized or ordered by the City Commission, and that the judgment was proper because of the plaintiffs' failure to allege or establish the existence of such a specific authorization or order. Although the summary judgment also recited that no genuine issue of material fact existed, it is apparent that the trial court's decision was based upon the City's interpretation of § 14–9–7, supra, because the judgment provided:

"3. That the City Commission of the City of Albuquerque neither authorized nor ordered the execution of the acts of the police officers as alleged in the Amended Complaint."

Briefly summarized, the facts before the court, stated most favorably to the plaintiffs, were as follows: The police officers, in the early morning hours of January 14, 1965, while in the performance of their general duties and while acting under the general authority, orders, rules and regulations of the City of Albuquerque, including the ordinance hereafter quoted, saw plaintiff Jose A. Montoya near a house. Jose began to run, and they chased him to his house. The police officers entered the Montoya house, without a warrant, to see why he ran. During the interview the alleged torts occurred. Jose's father, plaintiff Carlos Montoya, had a seizure and fell against one of the officers who hit him in the ribs; Jose was hit on the head with a flashlight. Both plaintiffs were arrested and taken to jail; Jose was in his undershorts. Both were later released without prosecution.

■ In deciding a summary judgment motion, the court must view all matters presented and considered by it in the most favorable aspect they will bear in support of the right to a trial on the issues, and all reasonable inferences must be construed in favor of the party against whom the summary judgment is sought. Jacobson v. State Farm Mutual Automobile Ins. Co., 81 N.M. 600, 471 P.2d 170 (1970); Martin v. Board of Education, 79 N.M. 636, 447 P.2d 516 (1968). However, if after considering all such matters in the light of these rules,·

there is no genuine issue of material fact and a basis is therefore present to decide the issues as a matter of law, then the summary judgment should be granted. Spears v. Canon de Carnue Land Grant, 80 N.M. 766, 461 P.2d 415 (1969); Worley v. United States Borax & Chemical Corp., 78 N.M. 112, 428 P.2d 651 (1967).

Plaintiffs argue that the acts complained of were actually authorized by the municipality by the terms of the City of Albuquerque Municipal Code, § 3.505 (1949), which reads:

"Arrests. The Chief of Police and police officers of the City are hereby authorized to arrest any person violating in their presence, or whom they have reasonable cause to believe has violated any ordinance of the City of Albuquerque, or any law of the United States or of the State of New Mexico, and upon arrest being made, the officer making the arrest shall, as soon as practicable, make or cause to be made, a complaint before the proper judicial officer for the issuance of a warrant for the apprehension or detention of the person arrested."

The issue determinative of this appeal is whether the above ordinance constitutes sufficient specific authorization and direction from the City to the police officers to meet the requisites of § 14–9–7, supra, and thus render the doctrine of sovereign immunity unavailable as a defense in all cases falling within the terms of the ordinance. If it does, then summary judgment was improper. If it does not, then the pleadings, depositions, affidavits and other matters before the court, even when considered most favorably to plaintiffs, did not create any material fact issue, the plaintiffs failed to establish the necessary elements of their statutory cause of action, and summary judgment and dismissal of the amended complaint was proper.

■ Before deciding this issue, we will dispose of the City's pending motion to dismiss this appeal, which was based upon its claim that the case is now moot because the claims against the individual defendants had been dismissed. This argument reasons that the police officers are the agents of the City and that the City can only commit a tort through is agents, and because the agents can no longer be held liable as a result of the dismissal, neither can the City be liable. Although this may be the common law rule with regard to a principal's liability, we are not dealing with the common law rule, but rather with a statute which specifically changes that rule. Section 14–9–7, supra, provides that either the City, or the officers, will be liable, but not both. Therefore, respondeat superior is not applicable and dismissal as to the agents does not affect the potential liability of the City under § 14–9–7, supra. The voluntary dismissal does, however, put plaintiffs in the position that if the City is not liable they have no remedy. For the reasons stated, the City's motion to dismiss is denied.

Returning to the determinative issue, does § 14–9–7, supra, contemplate municipal liability only when the governing body has specifically directed its officers to do the specific acts complained of, or are acts done under general authority also included? We must first examine the cases which have involved this statute. The most recent is Valdez v. City of Las Vegas, 68 N.M. 304, 361 P.2d 613 (1961), where the issue was the sufficiency of the pleadings to hold the City liable under the predecessor statute of § 14–9–7, supra. Plaintiff had alleged that the officer involved was acting for the City and "within the apparent scope of his duty." This court held that this was not sufficient, saying:

"In order that a good cause of action be pleaded it was required under the cases hereinabove cited that Gallegos not only be an officer of the City, and that he was acting under his commission as a police officer. Beyond the commission it was necessary in order to state a cause of action under the statute that 'the specific tortious act was done under the direction of the city or by its authority,' otherwise the common law rule of municipal immunity remains unchanged. * * * *"

The case of McWhorter v. Board of Education, 63 N.M. 421, 320 P.2d 1025 (1958), also mentioned the statute in question and said, with regard to the scope of the statute:

"* * * The language is sufficiently clear to show that in only a limited class of cases can a municipal corporation of any sort be sued without consent."

Neither of the above cases are determinative of the issue because the court did not specify what it considered to be "direction by. the City" or "action under its authority." Although there is indication that something more than action within the authority of the City officer is required, the extent of such requisites, or the limits of such a "class of cases," is not delineated. Also, because no fact finder has made a determination of the facts in our case, including whether or not the officers acted outside the scope of their authority, we are limited to a determination of whether plaintiffs could be entitled to recover from the City under § 14–9–7, supra, even if the factual claims of plaintiffs are taken as true.

Also involving the statute, but of no real help in our inquiry, are Salazar v. Town of Bernalillo, 62 N.M. 199, 307 P.2d 186 (1956); Rascoe v. Town of Farmington, 62 N.M. 51, 304 P.2d 575 (1956); and Cherry v. Williams, 60 N.M. 93, 287 P.2d 987 (1955). In Brown v. Village of Deming, 56 N.M. 302, 243 P.2d 609 (1952), involving an action against a municipality under the statute in question, the plaintiff was arrested under a warrant issued at the specific direction of the village trustees. The court held that the statute contemplated exactly this type of action and that the plaintiff should have been allowed to recover. However, the court did not go so far as to specifically limit the application of the statute to such situations.

The basic requirements for establishing a cause of action under this statute were considered in Taylor v. City of Roswell, 48 N.M. 209, 147 P.2d 814 (1944). The court said:

"The question presented is whether a municipality is liable for an assault of its officers when making an arrest or when otherwise dealing with a person where it is not charged that such assault was committed by authority of such municipality or in the execution of its orders. * *"
The court held that a complaint which did not make such allegations did not state a cause of action, but it did not say what constitutes "authority" of the municipality or in the execution of its orders. * * *"

The first case which considered the statute in question originally enacted in ch. 67, § 1, N.M.S.L.1905, is Baca v. City of Albuquerque, 19 N.M. 472, 145 P. 110 (1914). The holding of that case is only that it must be pleaded, as was done in our case, that the tortious act was done by authority of or in execution of orders of the municipality. However, the most important aspects of the case are the illustrations. given by the court as to its interpretation of fact situations in which liability under the statute would arise:

"For illustration, suppose the city council should instruct the chief of police to· tear down a building, or to close a ditch, and pursuant to such order he should do· so. In such a case the statute says he shall not be individually liable for such act, but that the liability shall rest upon the city. The city authorizes the closing of a street, and under such authority the marshal proceeds to do so. The marshal would not be liable, as he acted under the· authority of the city, but the city would be liable under the statute, if damages were recoverable. The statute does not undertake to change the common law rule, except in those cases where the specific tortious act was done under the direction of the city, or by its authority."

Although this language must be considered dicta, we feel that it is highly instructive because it was written at a time quite close to that at which the legislation was passed.. It is significant that the court in 1914 would use illustrations which indicate that the· statute operates in cases where the City's.

governing body specifically directs the doing of the act that caused the injury. Although the opinion does not specifically limit the operation to such situations, we believe that it is significant that only illustrations involving specific governing body direction were used by the court.

■ Although the cases cited aid in understanding the problem, we must construe the statute itself in order to answer the specific question presented. A statute must be interpreted as the Legislature understood it at the time it was enacted. See Burch v. Foy, 62 N.M. 219, 308 P.2d 199 (1957); State v. Thompson, 57 N.M. 459, 260 P.2d 370 (1953). Therefore, we are faced with the difficult determination of what was intended by the 1905 Legislature when it adopted the statutory language in question.

We are now in an era of change in which, as a result of long and extensive criticism of the doctrine, the concept of municipal immunity is being limited drastically by legislative acts and even by court decisions. See Symposium-Sovereign Immunity and Public Responsibility, 1966 U.Ill.L.F. 795; Borchard, Government Liability in Tort, 34 Yale L.J. 1, 129, 229 (1924–1925); 36 Yale L.J. 759, 1039 (1926–1927); Price and Smith, Municipal Tort Liability: A Continuing Enigma, 6 U.Fla.L.Rev. 330 (1953); Green, Freedom of Litigation: Municipal Liability in Operation, 54 Harv. L.Rev. 437 (1940–1941); Smith, Municipal Tort Liability, 48 Mich.L.Rev. 41 (1949–1950).

During the period when § 14–9–7, supra, was enacted, however, the doctrine was still very strong and little criticism of it was heard. It was justified on various theories, including extension of the immunity to the municipality as the representative of the sovereign, and the public policy consideration that governmental bodies would perform their duties more effectively if not hampered by fear of tort liability. See Annot., Municipal Immunity from Liability for Torts, 60 A.L.R.2d 1198 (1958); 3 Abbott, Municipal Corporations § 955 (1906).

In Mechem, Public Officers §§ 850, 851 (1890), the theory was expressed that the municipality was not liable because the officers were agents not of the municipal governing body but of the public, saying:

"The power intrusted to the corporation in such cases is intrusted to it as one of the political divisions of the State, and it is conferred not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power for the benefit of all citizens. The officers who exercise this power are not then the agents or servants of the municipality, but are public officers, agents or servants of the public at large, and the corporation is not responsible for their acts or omissions nor the acts or omissions of the subordinates appointed by them."

Other treatises of that era lend similar support to this theory:

" * * * The municipal corporation in all these and the like cases represents the State or the public; the police officers are not the servants of the corporation; the principle of respondeat superior does not therefore apply, and the corporation is not liable unless by virtue of a statute expressly creating the liability." IV Dillon, Municipal Corporations § 1656, at 2887 (5th Ed. 1911).

Under any of these theories the municipal governing body was immune from tort liability for acts of its police officers. We believe that our 1905 Legislature, though remaining committed to the basic tort immunity, recognized the inequity of allowing the governing body to specifically authorize an act to be done and then remain immune from responsibility, leaving its agent or officer, who merely carried out its order, to be alone liable.

■ Thus, we interpret the statute as basically protecting the agent or officer when carrying out specifically directed duties or orders, and as giving the injured party some redress against the municipality, but not as removing the governmental immunity in all tort actions where its officers might have been acting within the gen-

eral scope of their authority or in the performance of their general duties. For the Legislature to have so provided would not have been a great departure from the general state of the law in 1905, whereas to provide for broad scale municipal tort liability would have been a startling development. The narrow illustrations of the application of the statute given in Baca v. City of Albuquerque, supra, support our conclusion, as do the old treatises cited above.

Further, in support of our conclusion is the fact that in 1959 our Legislature determined the necessity of enacting §§ 5–6–18 to 5–6–22, N.M.S.A.1953, being Laws 1959, ch. 333, §§ 1–5. Section 5–6–18 states in part that the purpose of the act is " * * * to provide a means for recovery of damages * * * " against a city for acts resulting from its employee's negligence during the course of employment. Section 5–6–20 provides in part that "suits may be maintained * * * " against the city for the negligence of its officers or employees in the course of their employment to the extent the alleged negligence is covered by liability insurance. This act constitutes a clear and distinct expansion of municipal tort liability in certain areas and under specific conditions, and weakens plaintiffs' argument that § 14–9–7, supra, is so broad as to eliminate municipal tort immunity in cases within the language of a general ordinance such as § 3.505, supra.

Regardless of what our views might be concerning the doctrine of sovereign immunity in our democratic system, ours is not a legislative function, and we will not knowingly engage in judicial legislation. Any enlargement of municipal tort liability must be accomplished through the Legislature.

We hold that the Legislature in 1905 intended that the statute provide municipal liability only in cases where the governing body or its authorized agents specifically directed the municipality's officers or agents to do the complained of act. In this case, the municipal ordinance does not constitute the specific authorization or order contemplated by § 14–9–7, supra.

Therefore, even if the facts were as claimed by plaintiffs, summary judgment was proper as a matter of law, and the trial court properly dismissed their amended complaint. The judgment is affirmed.

It is so ordered.

WATSON and McKENNA, JJ., concur.