563 P.2d 103

**Joe S. GALLAGHER, Plaintiff-Appellee,**

v.

**ALBUQUERQUE METROPOLITAN ARROYO FLOOD CONTROL AUTHORITY, Defendant-Appellant.**

**No. 2808.**

Court of Appeals of New Mexico.

March 15, 1977.

Writ of Certiorari Denied April 20, 1977.

Joseph M. Fine and Stanley P. Zuris, Albuquerque, for defendant-appellant.

Roy A. Jacobson, Jr., Zeikus & Reichert, P.A., Albuquerque, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

The issue is whether defendant AMAFCA (Albuquerque Metropolitan Arroyo Flood Control Authority) has "sovereign immunity" from liability for its torts. Sections 75–36–1 through 75–36–103, N.M.S.A.1953 (Repl.Vol. 11, pt. 2). AMAFCA is authorized and directed "to acquire, equip, maintain and operate a flood control system . . . ." Section 75–36–19, supra. This includes "necessary or desirable, related or appurtenant, facilities . . . ." Section 75–36–4(K), supra. In this case an AMAFCA service road is involved.

For the purpose of this appeal, it is a fact that "AMAFCA placed a steel cable across its service road to prevent public travel thereon . . . ." Plaintiff, riding his trail bike along the service road, ran into the cable and was injured. His complaint alleged that AMAFCA was negligent in causing the cable to be strung across the road. Defendant moved for summary judgment, claiming it could not be held liable because of sovereign immunity. The trial court denied the motion; we granted AMAFCA's application for an interlocutory appeal.

### 1. *Applicable Law*

■ (a) The accident occurred in June, 1974. *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1975) held that in tort actions, common law sovereign immunity could no longer be interposed as a defense by the State or any of its political subdivisions. However, *Hicks* does not apply if the tort occurred prior to July 1, 1976. *Hicks*, supra, is not applicable to this case.

(b) The Public Officers and Employees Liability Act modifies common law sovereign immunity. Sections 5–13–1 through 5–13–17, N.M.S.A.1953 (Repl.Vol. 2, pt. 1, Supp.1975). This act does not apply to claims arising before the effective date of the act. Section 5–13–16, supra. The act does not apply to this case because its effective date was July 1, 1975. See Laws 1975, ch. 334, § 17.

(c) Sections 5–6–18 through 5–6–21, N.M.S.A.1953 (Repl.Vol. 2, pt. 1) were in effect at the time of the accident. See Laws 1975, ch. 334, § 18. Neither party claims this law is applicable in this lawsuit.

(d) Common law sovereign immunity, as it existed in New Mexico prior to the decision in *Hicks v. State*, supra, is applicable to plaintiff's claim.

### 2. *AMAFCA's Status*

■ AMAFCA is established by statute. Sections 75–36–4(C) and 75–36–5, supra. It is "a body corporate and politic, a quasi-municipal corporation, and a political subdivi-

sion of the state." Thus, AMAFCA has two roles—that of political subdivision and that of a quasi-municipality.

### 3. State Instrumentality

 The role of a body politic, a political subdivision of the State, is the role of an instrumentality of state government. *Albuquerque Met. Arroyo Flood Con. A. v. Swinburne,* 74 N.M. 487, 394 P.2d 998 (1964). As a state instrumentality, AMAFCA would be immune from tort liability. *Sangre De Cristo Dev. Corp., Inc. v. City of Santa Fe,* 84 N.M. 343, 503 P.2d 323 (1972), cert. denied, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 400 (1972); *Vigil v. Penitentiary of New Mexico,* 52 N.M. 224, 195 P.2d 1014 (1948); see *State v. Burks,* 75 N.M. 19, 399 P.2d 920 (1965). There is nothing in the record indicating that AMAFCA was acting as a state instrumentality; AMAFCA does not claim that its participation in the steel cable incident was in the role of a state instrumentality. The immunity of a state instrumentality is not involved in this case.

### 4. Quasi-Municipality

(a) AMAFCA does claim immunity on the basis that its role was that of a quasi-municipality. It asserts that there is a distinction between municipal corporations and quasi-municipal corporations. It relies on a "general rule" that quasi-municipal corporations are not liable for torts unless so provided by statute. This contention relies on the label "quasi-municipal" and disregards what the quasi-municipal corporation does.

(b) Where the duties are "ordinarily wholly governmental" the quasi-municipal corporation has been accorded immunity. 18 McQuillin, Municipal Corporations, § 53.-05 (3rd Ed.Rev.1963). In such a case the immunity would exist by virtue of the "governmental" activity, regardless of whether the label was municipal, quasi-municipal or state instrumentality. The discussion in McQuillin, supra, § 53.05, as to immunity for quasi-municipal corporations indicates a lack of uniformity in the decisions. McQuillin, supra, § 53.05a, states

that "liability has been imposed where the tort was connected with an undertaking . . . which was in the nature of a proprietary activity."

 (c) Immunity for municipalities in New Mexico has depended on whether the function involved was governmental or proprietary. See *Sangre De Cristo Dev. Corp., Inc. v. City of Santa Fe,* supra. This distinction has also been applied to county activities, *Elliott v. Lea County,* 58 N.M. 147, 267 P.2d 131 (1954); see *Sangre De Cristo Dev. Corp., Inc.,* supra. McQuillin, supra, § 53.05, considers counties to be quasi-municipal corporations.

 (d) No reason has been advanced as to why the immunity of a flood control authority should be considered in a manner different from the immunity of a municipality or a county.

 (e) The fact that AMAFCA has the label of "quasi-municipality" does not determine whether it is immune from liability for its torts. Whether AMAFCA has immunity depends on whether its activity was governmental or proprietary.

### 5. Flood Control System as Governmental or Proprietary

(a) AMAFCA contends that the governmental versus proprietary analysis should be limited to "the placing of a steel cable across an AMAFCA service road in order to prevent public travel thereon." It asserts that consideration of its general purpose—flood control—would be absurd. It argues that if storm sewer drainage is proprietary, all of its acts would be proprietary notwithstanding the statute establishing "AMAFCA as an organization performing both governmental and proprietary acts."

 (b) AMAFCA's contention is an overstatement; it does not necessarily follow that all of its activities would be proprietary if flood control activities are held to be proprietary. Consider, as examples only, AMAFCA's authority to levy ad valorem taxes, condemn property for public use, and establish facilities across or along pub-

lic rights of way. Section 75–36–22, supra, paragraphs (J), (L), and (P). However, we are not concerned here with categorizing all of AMAFCA's activities.

■ (c) Whether AMAFACA's flood control activities are governmental or proprietary is an appropriate consideration in this case. Categorization of the activity or function involved is an approach followed in New Mexico decisions. *Murphy v. City of Carlsbad,* 66 N.M. 376, 348 P.2d 492 (1960) did not limit its consideration to the carrousel within the amusement area of the public park; the question was whether "the establishment and maintenance of a municipal park is a proprietary function . .." *McWhorter v. Board of Education,* 63 N.M. 421, 320 P.2d 1025 (1958) did not limit its consideration to the replacement of broken window panes in the school building; consideration was given to the function of a school district. *Barker v. City of Santa Fe,* 47 N.M. 85, 136 P.2d 480 (1943) did not limit its consideration to the conditions of the sewage disposal plant; the question was whether the operation and maintenance of a sewage disposal plant was a proprietary function.

■ (d) No claim is made that the service road was not a part of AMAFCA's flood control system. AMAFCA asserts that the maintenance of a flood control system is a governmental activity. It relies on the four tests stated in *Barker v. City of Santa Fe,* supra, and approved in *Murphy v. City of Carlsbad,* supra. The third test of governmental activity is: "When the municipality [here the quasi-municipality] acts for the public benefit generally, as distinguished from acting for its immediate benefit and its private good." AMAFCA does not meet this test; it operates and maintains a flood control system "for the benefit of the authority and the inhabitants thereof". Section 75–36–19, supra. As stated in *Albuquerque Met. Arroyo Flood Con. A. v. Swinburne,* supra: ". . . it cannot seriously be doubted that the Act does not have a uniform operation throughout the State and is a special law enacted by the legislature for the express purpose of ac-

quiring and operating a flood control system to benefit the property within the boundaries expressly specified in the Act." Compare *Barker v. City of Santa Fe,* supra. AMAFCA's maintenance of its flood control system, which includes its activities in connection with the service road, was not a governmental activity. The activity was proprietary; AMAFCA could not interpose the defense of sovereign immunity to avoid liability for negligent acts in connection with the activity.

(e) Our holding that AMAFCA's flood control activities are proprietary is supported by *Barker v. City of Santa Fe,* supra, which held the maintenance of a sewage disposal plant was a proprietary activity. AMAFCA would distinguish *Barker,* supra, on the basis that its flood control activities involve storm drainage rather than sewage disposal. We see no merit to this asserted distinction; *Barker* cites favorably a decision which held that construction of storm sewers was a proprietary activity. Our holding is also supported by the statement in *State v. Town of Grants,* 66 N.M. 355, 348 P.2d 274 (1960) that "the operation by a municipality of sewer and water facilities is in a proprietary capacity." See also: *Taylor v. Roosevelt Irr. Dist.,* 71 Ariz. 254, 226 P.2d 154 (1950); *Chandler v. Drainage Dist. No. 2,* 68 Idaho 42, 187 P.2d 971 (1947); *Dilley v. City of Houston,* 148 Tex. 191, 222 S.W.2d 992 (1949); *Associated Enter., Inc. v. Toltec Watershed Imp. Dist.,* 490 P.2d 1069 (Wyo.1971); *Sigurdson v. City of Seattle,* 48 Wash.2d 155, 292 P.2d 214 (1956).

### 6. *The Cable Incident as Governmental or Proprietary*

■ If the governmental versus proprietary analysis is limited to the cable incident, as AMAFCA contends, the result is the same. Placing the steel cable across the service road to prevent public travel on the road is more than the governmental activity of regulating the use of the road through traffic control devices. See *Hammell v. City of Albuquerque,* 63 N.M. 374, 320 P.2d 384 (1958). What is involved is the placing of an obstruction in the service

road. A municipality is liable for the negligent failure to keep its streets in a reasonably safe condition. *Hammell v. City of Albuquerque,* supra; *Johnson v. City of Santa Fe,* 35 N.M. 77, 290 P. 793 (1930). Liability exists because maintenance and repair of municipal streets are proprietary functions. McQuillin, supra, §§ 53.39, 53.41. As to counties, compare *Dairyland Ins. Co., Inc. v. Board of County Com'rs,* 88 N.M. 180, 538 P.2d 1202 (Ct.App.1975). AMAFCA's placing of the cable across the road was a proprietary activity.

The order denying the motion for summary judgment is affirmed.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.