573 P.2d 240

Quentin RODGERS, Evelyn Rodgers, American Employers Insurance Company, Employers Fire Insurance Company and American States Insurance Company, Plaintiffs-Appellants,

v.

CITY OF LOVING, Dale Hamilton and James Williams, Defendants-Appellees.

No. 2897.

Court of Appeals of New Mexico.

Nov. 29, 1977.

R. E. Thompson, Robert E. Sabin, Atwood, Malone, Mann & Cooter, P. A., Roswell, for plaintiffs-appellants.

Lowell Stout, Hobbs, and Dick A. Blenden, Carlsbad, for defendants-appellees City of Loving and Dale Hamilton.

Jay W. Forbes and John M. Caraway, McCormick & Forbes, Carlsbad, for defendant-appellee, James Williams.

OPINION

HERNANDEZ, Judge.

This case involves an appeal and a cross appeal. The second point of error on the cross appeal is dispositive of the matter.

The plaintiffs sued the defendants for the wrongful destruction of their buildings and contents and the consequent interruption of their business. The jury returned a verdict in their favor against the City of Loving and James Williams. The defendant Dale Hamilton was dismissed from the suit by order of the Court on an issue which will be discussed later.

On February 28, 1974, Hamilton, (an employee of the City of Loving) while acting under orders, (aided by Williams) was burning dead weeds and grass on the property of Williams' mother, which adjoins plaintiffs' property. The fire spread onto plaintiffs' property, resulting in the destruction of their property and interruption of their business.

■ The second point of error on the cross appeal is that the trial court erred in giving the following instruction:

"That defendants were engaged in what is known as an abnormally dangerous activity when they engaged in open burning of weeds in the city limits of Loving and in the vicinity of the buildings owned by Quentin and Evelyn Rodgers and that they are strictly liable for the damage resulting therefrom even if they exercised due care in the burning operation.

\* \* \* \* \* \*

"One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent such harm.

\* \* \* \* \* \*

"In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) Whether the activity involves a high degree of risk of some harm to the person, land or chattels of others;

(b) Whether the gravity of the harm which may result from it is likely to be great;

(c) Whether the risk cannot be eliminated by the exercise of reasonable care;

(d) Whether the activity is not a matter of common usage;

(e) Whether the activity is inappropriate to the place where it is carried on; and

(f) The value of the activity to the community."

The second and third instructions above are nearly verbatim copies of § 519(1) and § 520 of the Restatement (Second) of Torts (1965).

The rationale of the rule most generally followed on this question and which we elect to adopt, is the following:

"The dangerous potentialities of fire seem to have been recognized very early. Something approaching strict liability for fire apparently was imposed upon landholders by the early common law. \* \*

\* \* \* \* \* \*

"The American courts . . . have consistently rejected the older rule, and have held, in the absence of legislation, that there is no liability for the escape of fire where the defendant was not negligent. It is recognized, of course, that fire is a dangerous thing, and a great amount of care is required in dealing with it. . . . But its utility is so great, and it is so clearly sanctioned by universal use, that strict liability, even on the part of industrial enterprises, is not considered convenient or desirable." W. Prosser, The Law of Torts (4th ed. 1971) § 77, at 503, 504.

Even if we were to apply the rule of strict liability as stated in § 519 and § 520 of the Restatement (Second) of Torts, supra, the instant situation does not present one of the factors necessary for the imposition: "inability to eliminate the risk by the exercise of reasonable care." The trial court erred in giving the instruction on strict liability.

To aid the trial court on the retrial of this matter we will comment on the first point of error in the cross appeal. This point is that the doctrine of sovereign immunity precludes plaintiffs' claim against the City of Loving.

The fire occurred on February 28, 1974; however, plaintiffs did not file their suit until July 28, 1975. At the time of the fire, Ch. 300, § 14–9–7, 1965 N.M.Laws was in effect:

"No personal action shall be maintained in any court of this state against any member or officer of a municipality for any tort or act done, or attempted to be done, when done by the authority of the municipality or in execution of its orders. In all such cases, the municipality shall be responsible. Any member or officer of the municipality may plead the provisions of this section in bar of such action whether it is now pending or hereafter commenced."

Chapter 333, §§ 1 and 3, 1959 N.M.Laws, states:

"Section 1. The purpose of this act shall be to provide a means for recovery of damages for death, personal injury or property damage, resulting from the employer's or employee's negligence, which occur [sic] during the course of employment for state, county, city, school district, district, state institution, public agency or public corporation, its officers, deputies, assistants, agents and employees."

"Section 3. Suits may be maintained against the state, county, city, school district, district, state institution, public agency, or public corporation of the state and the persons involved for the negligence of officers, deputies, assistants, agents or such employees in the course of employment; provided, however, no judgment shall run against the state, county, city, school district, district, state institution, public agency or public corporation of the state unless there be liability insurance to cover the amount and cost of such judgment."

All of these sections were repealed effective July 1, 1975, by Chapter 334, § 18, 1975 N.M.Laws. The same chapter of the statutes included the Public Officers and Employees Liability Act, Ch. 334, §§ 1–17, 1975 N.M.Laws. Section 2 sets out the purpose of the act:

"The purpose of this act is to modify the common-law doctrine of sovereign immunity by providing a permissive method whereby the state or a local public body may elect to protect itself and its officers and employees from personal liability arising out of certain acts committed during the performance of governmental and proprietary activities and to compensate the individuals wrongfully harmed by these actions."

Section 16 provides:

"The Public Officers and Employees Liability Act does not apply to any claim against a public officer or employee arising before the effective date of the Public Officers and Employees Liability Act."

The effective date of the Act was July 1, 1975, after the acts at issue had occurred. (The Act was repealed by Ch. 58, § 27, 1976 N.M.Laws.)

■ The cross appellants contend that since Ch. 333, §§ 1 and 3, 1959 N.M.Laws, supra, were no longer in effect when this suit was filed and Public Officers and Employees Liability Act did not apply, the common law doctrine of sovereign immunity applied and was a bar to plaintiffs' suit. We do not agree.

■ As a general rule, if a right is based solely upon a statute, there being no such right at common law, the repeal of the statute abolishes the right, unless the repealing statute includes a saving clause or unless the right has vested. *Southern Service Company v. Los Angeles County*, 15 Cal.2d 1, 97 P.2d 963 (1940). However, in this state the right of a litigant need not have vested but his claim must be contained in a pending case. Article IV, § 34 of the Constitution of New Mexico provides: "No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." Since the 1959 and 1965 statutes quoted above were repealed before this action was brought, however, this case was not a "pending case" within the meaning of the Constitution when the statutes were repealed. The constitutional provision does not apply and there is no saving clause in

the 1975 Public Officers and Employees Liability Act; nonetheless, the general rule is inapplicable where the new statute continues the basic policy of the old statute that it repeals. That is, even though the language of a repealing statute may be unqualified, if the substance of the previous statute is continued in the new one, it will be regarded as an extension of the old statute, and prior rights although not vested or pending in a case will not abate. The Public Officers and Employees Liability Act continued the policy of limited waiver of sovereign immunity found in Chapter 333, §§ 1 and 3, 1959 N.M.Laws. *McLain v. Haley,* 53 N.M. 327, 207 P.2d 1013 (1949); *State v. Thompson,* 37 N.M. 229, 20 P.2d 1030 (1933); *Cortesy v. Territory,* 7 N.M. 89, 32 P. 504, 19 A.L.R. 349 (1893); *Alameda v. Kuchel,* 32 Cal.2d 193, 195 P.2d 17 (1948). The City of Loving is therefore subject to liability to the extent of its insurance coverage.

■ The defendant Hamilton moved that he be dismissed on the basis that he was exempt from suit by the provisions of Chapter 300, § 14–9–7, supra. The trial court granted his motion. Appellants did not appeal Hamilton's dismissal. Section 14–9–7, supra, was repealed by § 18, supra, but not continued in §§ 1–17.

Appellants contend that the trial court ruled correctly and consequently the City of Loving is solely responsible without limitation as to the amount of liability. Appellants are mistaken. None of the provisions of § 14–9–7, supra, survived its repeal because none of its provisions were continued in the Public Officers and Employees Liability Act.

The judgment of the district court is reversed and the case is remanded for a new trial because of the error in the jury instructions.

IT IS SO ORDERED.

LOPEZ, J., concurs.

SUTIN, J., specially concurs and dissents.

SUTIN, Judge (specially concurring and dissenting).

I specially concur in reversal of the judgment against City of Loving and dissent on reversal of the judgment against Williams.

Plaintiffs are Quentin Rodgers and Evelyn Rodgers (Rodgers), owners of property destroyed by fire, and three insurance carriers who paid Rodgers $29,100.00 for property damage and $4,000.00 for loss of earnings. The insurers were subrogated, for the amount paid, to all of the rights of recovery of Rodgers against defendants. Rodgers sought recovery of damage in excess of the limits of the insurance policies.

The defendants are City of Loving (Loving), Dale Hamilton (Hamilton), its Police Chief, and James Williams (Williams). Williams is the son of the owner of the property which is adjacent to the Rodgers, and on which property Hamilton and Williams burned dead grass and weeds. This weed fire caused the burning of Rodgers' property. The owner of the Williams' property is not a party defendant. The action against Hamilton was dismissed by the court the morning of trial because § 14–9–7, N.M.S.A.1953 (Repl.Vol. 3) was applicable.

The jury awarded all plaintiffs the sum of $10,000.00 and judgment was entered. Plaintiffs appeal from the judgment and from an order that denied plaintiffs additur, or in the alternative, a new trial on the issue of damages. Loving cross-appealed from the judgment and from the order denying its motion N.O.V. *Defendant Williams did not cross-appeal.*

Plaintiffs' complaint is based on two theories of liability: (1) negligence of defendants and (2) strict liability of defendants. On appeal, Loving contends that the trial court erred in submitting the case to the jury on the theory that defendants were strictly liable even if they exercised the utmost care in the burning operation. *Williams did not make this contention and did not rely on the brief of Loving. Neither did Williams cross-appeal to reverse the judgment of the trial court.* Williams seeks only to affirm the judgment below. As far as Williams is concerned, this Court is left

with nothing to review on the issue of strict liability. *Kimberly, Inc. v. Hays,* 88 N.M. 140, 537 P.2d 1402 (1975); *Novak v. Dow,* 82 N.M. 30, 474 P.2d 712 (1970); *Hendrix v. Dominguez,* 58 N.M. 216, 269 P.2d 1099 (1954). Williams is bound by the trial court's judgment on negligence and strict liability, and he remains liable for damages in the sum of $10,000.00 unless additur is allowed.

### A. *The doctrine of strict liability was not applicable to Loving.*

At 10 A.M. the morning of February 28, 1974, Hamilton and Williams were burning dead grass and weeds on the Williams' property, immediately to the west of Rodgers' property. The two men were cleaning the property as part of the clean-up campaign initiated by Loving during the winter of 1973–74. Hamilton had the fire truck present and used the water to control the fire and to spray the walls of surrounding buildings to prevent the spread of fire. At noon, Hamilton left the Williams' property to attend an appointment in Carlsbad. Williams remained at the location of the fire for approximately 90 minutes and policed the area by collecting hot coals. The Rodgers' property was consumed by fire during the afternoon of the same day.

This was not an accidental fire or one caused by a stranger or trespasser. See, Liability of one on whose property accidental fire originates for damages from spread thereof, 18 A.L.R.2d 1081 (1951). This was a fire set for a lawful purpose. See, Liability for spread of fire purposely and lawfully kindled, 24 A.L.R.2d 241 (1952). In either case, Loving was liable for damage caused by the spread of the fire to the property of another if it was negligent in controlling it.

On the issue of strict liability, plaintiffs rely on Restatement of Torts 2d, §§ 519 and 520 (1977). Section 519 reads:

(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

Section 520 reads in pertinent part:

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

\* \* \* \* \* \*

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

Sections 519 and 520, *prior to reassessment* designated "abnormally dangerous activities" as "ultrahazardous activities." We looked askance at these former sections because these Restatement rules ignored the relation of the activity to surrounding circumstances. *Otero v. Burgess,* 84 N.M. 575, 505 P.2d 1251 (Ct.App.1973). Section 520(e), supra, does consider "inappropriateness of the activity to the place where it is carried on" as a factor to be considered in determining whether an activity is abnormally dangerous. We, therefore, accept §§ 519 and 520 as the law on this subject.

"The doctrine stems from an English case, *Rylands v. Fletcher,* L.R. 3 H.L. 330, frequently given as the case launching the old doctrine, 'sic utere tuo ut alienum non laedas.'" (Use your own property in such a manner as not to injure that of another). *Thigpen v. Skousen & Hise,* 64 N.M. 290, 294, 327 P.2d 802, 805 (1958). It is clear from the cases cited in Annot. 24 A.L.R.2d 241 (1952) that the American decisions have uniformly repudiated the applicability of the doctrine of *Rylands v. Fletcher* to intentional fire cases (id. 254). New Mexico has not been confronted with this problem.

It has been held that strict liability is justified for recovery of damages caused by blasting operations, *Thigpen,* supra, whereas this Court has held that strict liability was not applicable when dynamite was

stored in an appropriate place under surrounding circumstances then existing. *Otero,* supra. We hold that an intentional fire on one's land for a lawful purpose, which is an activity of common usage, is not "an abnormally dangerous activity" because, under the surrounding circumstances then existing, the fire could have been started and controlled with reasonable care. Under this rule, Loving was not subject to the doctrine of strict liability.

I concur that it was palpable error to instruct the jury on strict liability.

B. *Loving is liable for judgment in excess of insurance coverage.*

Plaintiffs, by reason of claimed legislative entanglements, contend that Loving is liable for an amount in excess of its insurance coverage. They claim that § 14–9–7, N.M.S.A.1953 (Repl.Vol. 3) and §§ 5–6–20 and 5–6–21, N.M.S.A.1953 (Repl.Vol. 2, pt. 1) are incompatible; that § 14–9–7, adopted by the trial court in dismissing Hamilton as a party defendant, removed Loving's sovereign immunity and made it liable for the acts of its employees under *Montoya v. City of Albuquerque,* 82 N.M. 90, 476 P.2d 60 (1970). This is a far fetched doctrine to present and the arguments are not meritorious.

These statutes were expressly repealed by the legislature in 1975. Laws 1975, ch. 334, § 18, an Act relating to Governmental Tort Liability, cited as "Public Officers and Employees Liability Act," (POELA), §§ 5–13–1, et seq., N.M.S.A.1953 (Repl.Vol. 2, pt. 1, 1975 Supp.). The effective date of this Act was *July 1, 1975.* The complaint was filed on *July 28, 1975.*

When the complaint was filed, § 14–9–7 and §§ 5–6–20, 5–6–21, supra, were repealed. The express repeal of a statute destroys it. Operationally, it is deemed never to have existed. *Beckwith v. Cactus Drilling Corporation,* 84 N.M. 565, 573, 505 P.2d 1241 (Ct.App.1972), Sutin, J. concurring. "There can be no doubt that the repeal of the statute . . . defeated all rights under the former, except those which had already become vested by judgment, or

were saved by an action already commenced. No further proceedings can be had under a statute which has been repealed." *Coffin v. Rich,* 45 Me. 507, 512, 71 Am.Dec. 559 (1858). We do not have to determine whether the statutes repealed were incompatible. They have been laid to rest.

We must determine whether POELA was in effect and applicable to this case.

Section 5–13–16 reads:

The [POELA] does not apply to any claim against a public officer or employee arising before the effective date of the [POELA].

It is important to note that the restriction does not apply to "a public body." It is limited to "a public officer or employee."

*Gallagher v. Albuquerque Metro., Etc.,* 90 N.M. 309, 563 P.2d 103 (Ct.App.1977), cert. den., 90 N.M. 636, 567 P.2d 485 (1977) involved a tort action against defendant. The accident occurred in *June, 1974.* POELA was effective *July 1, 1975.* The complaint was filed *August 8, 1975* (shown by record, not opinion). These facts are identical with those in the instant case. With reference to the applicability of POELA, the court said:

The Public Officers and Employees Act modifies common law sovereign immunity. Sections 5–13–1 through 5–13–17, N.M.S.A.1953 (Repl.Vol. 2, pt. 1, Supp. 1975). *This act does not apply to claims arising before the effective date of the act.* Section 5–13–16, supra. *The act does not apply to this case* because its effective date was July 1, 1975. See Laws 1975, ch. 334, § 17. [Emphasis added.] [563 P.2d at 105]

Without explanation or citation of authority, this Court held in effect that:

The [POELA] does not apply to any claim against any *public body,* public officer or employee *when the accident or tort was committed before July 1, 1975.*

Section 5–13–16, supra, the Prior Claims section, is clear. It does apply to a claim against a local public body. It does not apply to claims against a "public officer or

employee." POELA applies to Loving but not to Hamilton.

The trial court dismissed Hamilton as a party defendant. He was properly dismissed because the tort was committed prior to July 1, 1975.

Otherwise, POELA controlled the trial of this case.

(1) *POELA allows a judgment in excess of insurance coverage.*

The purpose of POELA was to modify the common law doctrine of sovereign immunity by permitting recovery against a public body for governmental as well as proprietary acts. It provided a permissive method whereby the state or a local public body may, if it desires to do so, elect to protect itself from liability. Section 5–13–2.

To protect itself, a local body may elect to purchase liability insurance or it may otherwise elect to subject itself to liability, apart from its insurance, by (1) filing a written notice of its election with the department of finance and the superintendent of insurance, and (2) by fixing the actual amount of its liability up to a maximum of $200,000.00 for negligent conduct. Section 5–13–8(B) and § 5–13–5(B). "When a judgment becomes final . . . sufficient money to pay the judgment shall be budgeted, *if the amount of the judgment exceeds the insurance coverage of the local public body* or if the local public body has otherwise subjected itself to liability pursuant to the [POELA]." Section 5–13–7. [Emphasis added.]

Loving chose the first elective. It purchased $25,000.00 of liability insurance. It did not elect to subject itself to liability. If the judgment exceeds $25,000.00 Loving shall budget and pay the excess amount. POELA did not grant Loving sovereign immunity for all amounts in excess of its insurance coverage. The legislature did not intend to relieve a local public body from liability where small amounts of insurance coverage were obtained. If the legislature had so intended, it would have re-enacted § 5–6–21 of the Act repealed. It provided that:

The plaintiff shall upon demand by the defendant waive the amount of any judgment recovered against the state which was not covered by liability insurance.

Loving is liable for any amount recovered in excess of insurance coverage.

C. *Defendant Williams is liable for additional damages by way of additur.*

Plaintiffs present the following questions for review:

(a) Was there substantial evidence to support the jury's verdict on damages in the inadequate amount of $10,000.00? The answer is "no."

(b) If substantial evidence sustains an award of damages in excess of $10,000.00, can the appellate court grant additur? The answer is "yes."

(a) *There was no substantial evidence to support the inadequate jury verdict of $10,000.00.*

Rodgers suffered loss by fire of a building and the contents of a bar and antique shop, together with loss of earnings. The evidence on the issue of damages presented by plaintiffs and defendants took four forms:

(1) Plaintiffs introduced in evidence, without objection, the General Alarm Fire Report of Loving's Fire Chief. It showed an estimated building loss of $15,000.00 and an estimated interior damage of $6,000.00. This report was an admission by Loving that the estimated loss was twice the amount of the verdict of the jury.

(2) Rodgers testified as to the value of the building before and after the fire, the value of the inventory and fixtures of the Loving bar before and after the fire, the value of the inventory of the antique shop before and after the fire, the value of the personal property stored on the premises, all of which totaled $37,929.02. The insurance companies paid Rodgers for the actual value of the loss, the sum of $29,100.00, an amount almost three times the amount of the jury verdict.

(3) Rodgers proved loss of business earnings of $4,343.95, $4,000.00 of which was paid by one of the insurance companies. He also proved consequential cleaning and guarding costs of $762.27 and $510.32 respectively.

(4) Loving produced Rodgers' income tax return that established the depreciated value of the building at $14,000.00. Depreciated value is not cash value. It was not an admission by Rodgers of cash value because the income tax returns were unrelated to the issue of damages. Mertens, Law of Fd. Income Taxation, Vol. 4, § 23.04, p. 13 (1968). In any event, the depreciated value was in excess of the jury verdict. Even if the depreciated value showed a cash value less than $14,000.00, the value of the contents of the building, the loss of business earnings, and consequential costs would establish the damages to be in excess of the jury verdict.

Was there substantial evidence to support a jury verdict of only $10,000.00?

Owners of property are qualified to express an opinion as to the value of property. *City of Albuquerque v. Ackerman*, 82 N.M. 360, 482 P.2d 63 (1971). However, opinion evidence of a lay person or an expert may be disregarded by the jury in whole or in part even if uncontradicted. *Phillips v. Smith*, 87 N.M. 19, 528 P.2d 663 (Ct.App. 1974); *Lopez v. Heesen*, 69 N.M. 206, 365 P.2d 448 (1961). On his own claim for damages, Rodgers' testimony is not conclusive, controlling or binding on a jury. It is to be weighed for its credibility. Rodgers' testimony standing alone would allow the jury to return a verdict of only $10,000.00 on the property loss.

However, where evidence is presented independent of opinion evidence to establish a damage figure as a matter of fact, and the evidence is uncontradicted, the wide latitude granted a jury in arriving at a damage figure disappears. Undisputed evidence must be accepted as true. *Morris v. Cartwright*, 57 N.M. 328, 258 P.2d 719 (1953). It may not be arbitrarily rejected if it is not subject to reasonable doubts. *Samora v. Bradford*, 81 N.M. 205, 465 P.2d 88 (Ct.App. 1970).

The insurance companies were subrogated to rights of Rodgers against defendants in the sum of $33,100.00. "Subrogation is a device by which one party is substituted for another." *Fireman's F.A. Ins. Cos. v. Phillips, Carter, R. & A., Inc.*, 89 N.M. 7, 546 P.2d 72 (1976). The insurance companies had an independent claim against the defendants in the amount of $33,100.00 paid to Rodgers. They were entitled to recover against defendants if they produced substantial evidence to support their claim. The jury found that Williams was negligent and subject to strict liability. To recover for the payments to Rodgers, the insurance companies must establish the extent of the damage. *Hardware Mut. Casualty Co. v. Baldus*, 316 Ill.App. 283, 44 N.E.2d 947 (1942).

The statutory form of a standard fire policy provides that the insurance company insures Rodgers ". . . to the extent of the actual cash value of the property at the time of loss, . . ." Section 58–8–10(f), N.M.S.A.1953 (Repl.Vol. 8, pt. 2). The insurers paid Rodgers $29,100.00 for the actual cash value of the property destroyed by fire, together with $4,000.00 for loss of earnings. These payments were the maximum coverage of the insurance policies. The payments were not made as an act of compromise, mistake, or in collusion with Rodgers.

The insurers also proved by Rodgers that the value of the property destroyed by fire, together with consequential damages and loss of earnings, exceeded the amount paid by them to Rodgers. Rodgers' opinion testimony, in the context of an independent claim by the insurance companies, stands in a different position. It was sufficient to support a recovery by the insurers for the amounts paid.

Opinion evidence is a weak link in the chain of evidence necessary to establish a fact when the claim is made by the party who rendered the opinion. It is a self-serving statement and the jury can give the opinion such weight as it believes it is entitled to receive. But Rodgers' testimony

does not stand alone. It was confirmed and corroborated by payments made by insurers of actual cash value. When the testimony of a witness is adequately corroborated, the witness is not subject to impeachment even though untrue statements were made on a collateral matter. *Fish v. Industrial Commission*, 12 Ariz.App. 486, 472 P.2d 97 (1970).

Defendants' contention that Rodgers was impeached by his income tax return does not discredit his testimony as to the value of the property.

The insurance companies established a damage figure of $33,100.00. This fact cannot be discarded by the jury as being doubtful in nature or speculative. Plaintiffs introduced in evidence the insurance policy of Loving that showed coverage of $25,000.00. By what reasoning the jury arrived at a damage figure of $10,000.00 for all plaintiffs remains a secret because we cannot inquire of the mental processes used by the jury.

The evidence is substantial that the insurance companies suffered damages of $33,-100.00, and Rodgers suffered damages of $1,616.54 for loss of earnings above the insurance reimbursement, cleaning costs, and security expenses.

There was no evidence to support the jury's verdict of only $10,000.00. Defendants made no argument nor produced any evidence to the contrary.

(b) *In this case, an appellate court can grant additur.*

The theory of "additur" is a corollary to that of "remittitur," the former to increase an inadequate verdict, the latter to decrease an excessive verdict. The applicable rule on additur and remittitur is the same. It was so stated in *Hammond v. Blackwell*, 77 N.M. 209, 212, 421 P.2d 124, 127 (1966) as follows:

An inadequate award will not be disturbed on appeal unless it appears to have resulted from passion, prejudice, partiality, undue influence or some corrupt cause or motive, where there has been palpable error or the measure of damage has been mistaken. (authorities omitted).

A like rule has been consistently applied by us where a remittitur or a new trial is sought upon a claimed excess award.

Additur has not yet been awarded by a New Mexico appellate court.

Excess or inadequacy of the award alone does not reflect an improper motive of the jury. Verdicts differ widely where the evidence of damage is precisely the same. Jurors, though conscientious in their performance of duties can err; they may overestimate or underestimate the damage figure. Were we to say that the verdict itself indicated an improper motive, every case would be susceptible to a remittitur or additur on reversal. But in the instant case there is no evidence to support the jury's verdict on damages. Yet there is competent and persuasive evidence that merits an increased damage award.

Unfortunately, the trial court did not instruct the jury on "subrogation." The jury did not know the position of the plaintiffs in this case. The trial record does not reflect that the jury knew that before Rodgers could recover for damages exceeding his insurance coverage, the insurance companies must first be reimbursed for payments made to Rodgers. The instruction on damages treated the plaintiffs as one entity. Instruction No. 1 on the issues of the case has phrases and sentences inked out, yet clear and readable. Perhaps the instructions were not sent to the jury room.

The verdict of the jury stood 10 to 2 in favor of the plaintiffs. Perhaps the jury compromised the damage figure in order to conclude the case.

Whether through improper motive or mistake in the measure of damages, the jury's verdict was palpable error.

Loving believes there is a vast difference between reduction of an excessive verdict and an increase of an inadequate verdict and relies on *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603, 95 A.L.R. 1150 (1935). The court held that under the Seventh Amendment to the Constitution of

the United States, a federal court, finding a verdict inadequate in an action for personal injuries due to negligence, is without power to add to it by refusing to grant the plaintiff a new trial if the defendant will accept an increase which the court deems sufficient.

The Seventh Amendment is not binding on the states, and as a result thereof, *Dimick* has been rejected and severely criticized. *Jehl v. Southern Pacific Company*, 66 Cal.2d 821, 59 Cal.Rptr. 276, 427 P.2d 988 (1967); *Drummond v. Mid-West Growers Cooperative Corp.*, Nev., 542 P.2d 198 (1975). *Genzel v. Halvorson*, 248 Minn. 527, 80 N.W.2d 854 (1957); *Caudel v. Swanson*, 248 N.C. 249, 103 S.E.2d 357 (1958); *Bodon v. Suhrmann*, 8 Utah 2d 42, 327 P.2d 826 (1958); *Fisch v. Manger*, 24 N.J. 66, 130 A.2d 815 (1957).

In the trial court, plaintiffs moved for additur, or in the alternative, a new trial on the issue of damages only. The motion was denied. Plaintiffs appealed from this order and request this Court to grant the relief.

A new trial on the issue of damages only can be granted by this Court when the damages involved are uncertain and the determination of the amount is the only issue involved. *Hammond v. Blackwell*, supra. "There are generally three conditions precedent . . . which must be fulfilled before a new trial can be limited to assessment of damages. First it must clearly appear that the issues are severable and distinct, and that there is no danger that damages cannot be accurately assessed absent a full presentation of evidence on liability. Second, before damages can be separately determined, or rather redetermined, the issue of liability must have been clearly settled. Finally, the overriding consideration of fairness to the parties must be assured; or, stated in the negative, no prejudice must result to either party." Pope and Sheehan, "Try, Try, Again . . ." A Proposal to Limit the Scope of New Trials in Texas, 7 St. Mary's Law Journal 1, 15 (1975).

This relief is proper in personal injury cases that involve pain and suffering, per- manent injury to health, or the value of a life. The damages are not liquidated and there can be no fixed measure of damage. This Court cannot step in and take the place of the jury. Wide latitude is allowed the fact finder in fixing the amount of the award. *Baca v. Baca*, 81 N.M. 734, 472 P.2d 997 (Ct.App.1970); *Powers v. Campbell*, 79 N.M. 302, 442 P.2d 792 (1968). The same relief is proper in property damage cases, based solely on opinion evidence, in which the jury is permitted wide latitude in arriving at a damage figure. *Phillips v. Smith*, supra. In such cases, on retrial, the verdict of the jury can be greater or smaller. Neither the appellate nor the trial court should be allowed to replace the jury.

A new trial on the issue of damages only would not be proper in the instant case because the damages are certain and liquidated, not to be fixed by a jury, but to be determined and fixed by the court.

Rodgers and the insurance companies settled the fire loss. The amount paid by the insurance companies became liquidated damages recoverable by the insurance companies. *C. H. Brown Banking Co. v. Baker*, 99 Mo.App. 660, 74 S.W. 454 (1903). *Buel v. Kansas City Life Ins. Co.*, 32 N.M. 34, 44, 250 P. 635, 638 (1926) quotes the following:

"The word 'liquidated,' in the sense of the rule relied on by counsel" (with respect to accord and satisfaction) "signifies that the amount claimed has been ascertained and agreed on or fixed by operation of law."

The court held that the general rule applies only to claims that are both liquidated and undisputed. "Liquidated damages" are those agreed upon, fixed by law, or susceptible of being made certain by mathematical calculations from known factors, while "unliquidated" are those which cannot be made certain by one party alone. *Cochrane v. Forbes*, 267 Mass. 417, 166 N.E. 752 (1929); *Robinson v. Loyola Foundation, Inc.*, 236 So.2d 154 (Fla.App.1970).

The insurers' claims were liquidated and undisputed. "Where the amount in question is undisputed or liquidated, and the

jury's verdict is for a lesser sum, it has been held or recognized in a number of cases that the appellate court has the power to increase the verdict to the higher figure." Annot. 56 A.L.R.2d 213, 267 (1957). Court's power to increase amount of verdict or judgment over either parties refusal or failure to consent to addition, 56 A.L.R.2d 267 § 22 (1957). In *Quesnel v. Raleigh*, 128 Vt. 95, 258 A.2d 840, 843 (1969), the court said:

When damages are liquidated and capable of correction by accurate measurement within fixed rules of law, an error in the verdict can and should be remedied either in the trial court or on appeal.

In *Kaiser v. Cannon*, Tenn.App., 529 S.W.2d 235, 238 (1975), the court said: A number of jurisdictions have permitted additur only where damages are liquidated. (Authorities omitted). In such cases there can be no argument that the province of the jury is invaded because no jury could properly have awarded more to the plaintiff than is provided for by the additur.

In support of plaintiffs' position, plaintiffs cited and discussed the following cases: *Cole v. Angerman*, 31 Colo.App. 279, 501 P.2d 136 (1972); *Fisch v. Manger*, supra; *Jehl v. Southern Pacific Co.*, supra; *Drummond v. Mid-West Growers Cooperative Corp.*, supra. Additional authorities that allowed additur were cited.

Williams' only response was that the granting or denial of plaintiffs' motion for additur rested in the discretion of the trial court and urged that no clear abuse of discretion was shown. Reliance is had on 5A C.J.S. Appeal and Error § 1652 (1958) in which it is stated that "Ordinarily, therefore, a verdict will not be disturbed by an appellate court on the ground that the damages awarded are inadequate, especially where the amount has been approved by the trial court as by refusing to set the verdict aside for inadequacy." This rule applies in those cases where the jury has wide latitude in fixing the amount of damages, and the plaintiff wants more. Neither the trial court nor the appellate court

will stand in the shoes of the jury even if they believe the plaintiff deserved more. Where the damages are liquidated and proven, discretion is not allowed. The trial court and this Court have a duty to award plaintiffs the amount proven and to grant additur when the verdict is inadequate. An appellate court has the same power to act as the trial court, and to render judgment which the trial court could or should have rendered. *O'Connor v. Papertsian*, 309 N.Y. 465, 131 N.E.2d 883, 56 A.L.R.2d 206 (1956). *Caen v. Feld*, 371 S.W.2d 209 (Mo.1963). In *Cole*, supra, where the amount in question was undisputed or liquidated, the appellate court remanded to the district court with directions to amend the judgment and include the additur.

The insurance companies and Rodgers are entitled to an additur of $24,716.54, for a total judgment of $34,716.54 against Williams.

This case should be remanded to the trial court with directions to amend the judgment to award Rodgers $1,616.54 and the insurance carriers $33,100.00.

D. *Cross-claims of defendants against each other were not decided below.*

Williams filed a cross-claim against Loving seeking indemnity for all loss or damages suffered because Loving was primarily liable for the loss or damage suffered by Rodgers.

Loving filed a cross-claim against Williams for indemnity or in the alternative for contribution.

These cross-claims were not submitted to the jury nor otherwise decided by the trial court.

Williams may yet seek relief against Loving on his cross-claim.